The first case for argument today is Hervise Mbetene v. Garland. And I believe Ms. Amingas is first up. Please proceed. By the way, will you give us the correct pronunciation of your client's name, please? I apologize, my French is sort of, kind of... No worries, we had to ask him as well. The correct pronunciation is Mr. Mbetene. Mbetene, okay, very well. We'll call in a petitioner and we won't mess it up, okay? Sounds good. Good morning, Your Honors, and may it please the Court. My name is Raquel Dominguez, and I, along with my co-counsels, Joseph Lee and Claire Kane, represent the petitioner, Mr. Hervise Mbetene. I'll aim to reserve three minutes for rebuttal. Keep your eye on the clock. We'll try to help you. Thank you. This case presents the rare instance where a foreign government has put in writing what persecution they intend to inflict, against who, and on what basis. The Cameroonian government has issued an arrest warrant. It names my client, Mr. Mbetene, and is for the crime of homosexuality. Any reasonable adjudicator would be compelled to conclude that the Cameroonian government is seeking to arrest Mr. Mbetene for his homosexuality. Counsel, let me just ask you this. I want to be sure we cabin this appropriately. My understanding of the petitioner's petition here is that the Harvey v. INS case says that it doesn't really matter whether there's been an adverse credibility determination. In this case, the existence of the nationwide warrant for your client's arrest by virtue of the fact that he is homosexual is in and of itself enough to get him asylum. Is that your position? Yes, Your Honor. Okay, and Harvey, as you know, the facts are a little bit different. That involving a rocky situation where people pretty clearly, according to the paperwork in the file, would have been executed. Does the fact that your client is the subject of an arrest warrant for being homosexual, is that enough in and of itself to establish that he qualifies for the subjective intent, basically, element of this request? Yes, Your Honor, and there's a couple reasons why. The first is that Ninth Circuit law is very clear that criminal prosecution on a protected basis is persecution. So whether you're facing execution in the case of Al Harvey or arrest and imprisonment in this case, that is persecution under asylum law. The second piece is the objective piece, which I know Your Honor was talking about the subjective, but to talk briefly about objective. Under asylum law, it's not that you have to have a 90% chance of persecution. It's that there has to be a reasonable possibility. And as Al Harvey states, even a 10% chance can be a reasonable possibility. So that's kind of one of the questions I have about your argument. I looked in your brief to see where you cited Al Harvey, and you've cited one time on page 31, and you cited for the proposition that a 10% chance of persecution may establish well-founded fear. But there's no argument connected to that case citation to say that even though asylum, fear of future persecution has both a subjective and an objective component, we can meet the subjective component just based on objective evidence. So I don't see that in your brief. It's certainly not in connection with the Al Harvey citation.  We do state that it's just common sense that someone who faces arrest would be afraid of returning to the country. But we need to know. The other difficulty I have is we need to know what that means in Cameroon. So is there, I assume your answer to this is going to be yes, but I'd like to know what is in this record that's sufficient for us to determine or for the agencies to have determined what this arrest warrant means and what will happen. It's however many years old now, four or five years old. Have people been going to his family and looking for him? What happens when a person is arrested on the charge of homosexuality in Cameroon? There are country condition reports in the record that were before the IJ and the BIA that stated that the Cameroonian government regularly enforces. And what's the date of those country condition reports? The latest one is 2018. His hearing before the IJ was in 2019. And I hear, Your Honor, that I understand that these are a couple years old, five years old at this point. However, we believe that if the record is stale such that, Your Honors, don't feel like you can make a factual determination at this point, we'd urge that the case should be remanded back to the agency. Under INS versus Ventura, could we make that determination in any case? I'm pretty sure the Supreme Court has said that we do not have the power to make those determinations. That's before the agency. Your Honor, there are cases in which the Ninth Circuit has found an individual to be eligible where the evidence is so compelling that any reasonable— And do they predate Ventura because in that case the Supreme Court reversed the Ninth Circuit and said this is a separation of powers issue. This is something that is left to the agency to do. We can't grant immigration relief. We could remand. I cannot, standing here before you, think off the top of my head of the name of a case that postdates Ventura, but I can certainly look in the record and come back on reply with a case citation. Ventura was talking about how the court cannot perform a review that the IJ or BIA has not previously done. Here, all of this evidence was before the IJ and BIA. That raises another point. I went back and was reviewing your briefs again, and I don't see where this argument was pressed before the IJ or, more importantly, before the BIA. Understandably, the arguments were challenging the adverse credibility determination. And then there was an earlier remand, but specifically to consider CAT relief. The order did not address asylum, and it does not appear there was any briefing or argument of the argument you're making now, which is that even though there's an adverse credibility determination, which obviates the testimony for purposes of his subjective belief, there's another way to reach that. So I don't think that's been presented to the agency, which is problematic. And I may be wrong. I'm more than willing to entertain that possibility. So if you can give me citations in the briefing before the BIA where that was argued, I'd be glad to hear that. Certainly, Your Honor. I, once again, don't have those off the top of my head. I'm happy to provide them in reply, or I can grab the record now if you'd like me to look at this moment. Oh, go ahead with your argument. And when you come back up on rebuttal, if you have a few minutes for that, maybe if you have citations, that would be helpful. Absolutely. Absolutely. Well, can I just follow up, my colleague? When this was remanded the first time, my understanding was the whole purpose of the remand was to address the legitimacy, if you will, of the nationwide arrest warrant. Is that correct? Yes, Your Honor. I'm sorry? I'm so sorry. Not the legitimacy of the nationwide arrest warrant, but remanded for the BIA to consider the fact that the warrant said on its face that it had been issued nationwide. Right. And as my colleague pointed out, as far as I can tell, there was no argument made with respect to asylum. It all had to do with adverse credibility and withholding or cap. Is that right? Yes, Your Honor. So if that's the case, is there a waiver of the claim for asylum, or is the fact that the case that you cited, the Harvey case, that was consistent throughout? So does that preserve the argument with respect to asylum? We believe it does, Your Honor. And although the framing of the issues might have been slightly different, counsel for my client has consistently pressed that there is an arrest warrant that's been issued for Mr. Mepitani. This warrant was given to the IJ, was given to the BIA. He consistently has said that he's afraid to return to Cameroon for fear that he'll be arrested. This is not a new concept that's being introduced. So the difficulty is that there's an adverse credibility determination, which raises the issue of whether that's supported by substantial evidence. But all the testimony about past persecution, the agency discounted because they didn't believe him, and they discounted the, and maybe incorrectly, the arrest warrant because of inconsistencies in his testimony about never having seen it, but yet it was submitted with his materials. So it doesn't seem this point, which is a very specific argument that, gee, we don't have evidence for his subjective belief, but we can overcome that because objective evidence is so strong, which, of course, raises another issue of is the objective evidence here to that level. But if the argument wasn't made, how is it not waived? I believe the argument was made, Your Honor, that the arrest warrant compels the conclusion that he is gay and that the adverse credibility determination is not supported by sufficient evidence in light of the arrest warrant. Sure. I agree with you that there was definitely challenges to the adverse credibility determination, including the IJ's conclusion that the petitioner was not actually, in fact, gay. And that's all been hotly disputed and contested. But this particular argument, which is a significant argument, and it may be there. Maybe you'll find it, but I don't think it was made before the BIA. And not before the IJ, but it would have been brought up to the BIA, I think. My record. What happens, well, let me frame it this way. If I understand your position correctly, we have our case, of course, amounts to persecution, period. End of story. Yeah. So I gather your position is that the adverse credibility determination really doesn't matter. Yes, sir. By citing the Alhavi case, Broomfield, that's a separate issue. Even if there is grounds for adverse credibility, it's got to go back for the IJ to determine the reality of this warrant. And if that is found, that's enough. Is that your position? Yes, Your Honor. That's exactly the position. And other than the Alhavi case, do you have any other cases? That's kind of almost an outlier in a way. I get the point of it, but do you have any other cases that suggest that adverse credibility really isn't determinative in this asylum situation? We do not, Your Honor. But I think it's important to put in context here that the reason there aren't other Alhavi cases is because often applicants for asylum come to the United States with only their testimony. It is so rare for a foreign government to put in writing exactly who they're going to persecute and on what protected ground. But there's the flip side to that argument as well, because the fact that these determinations are being made based on the petitioner's testimony and very little other evidence means that these adverse credibility determinations are particularly important because people have good reasons for wanting to be here, but they may not be truthful in what they're saying in order to obtain relief and be able to stay. And so we put a lot of emphasis on an adverse credibility determination, which is why it's only reviewed for substantial evidence. Yes, Your Honor. And here, given the objective evidence, the corroborating evidence that the IJ and BIA did not discuss, we don't believe that there is sufficient evidence for an adverse credibility determination. Do you want to save the balance of your time? I have one quick question. What is your understanding of why there is both a subjective and objective component for the asylum test? It goes back to what I just mentioned about how most applicants for asylum have only their testimony. And for most applicants, it's fairly easy to satisfy the subjective component. It's the objective component that's normally a real struggle for applicants because, once again, it's rare for a foreign government to issue an arrest warrant for a protected ground. Okay. Save the balance of your time, then. Thank you. Very well. All right, let's hear from the government. Mr. Mack. Good morning, and may it please the Court. Greg Mack for the Attorney General. Judge Fitzwater, to your question on the objective point, the regulations in the case law is pretty clear that there's both a subjective and an objective component with respect to the well-founded fear of persecution. So there's a subjective component asking whether the petitioner actually fears the potential harm, and then there's an objective component of whether it's reasonable for that person to have that fear. So those are both of the subjective. What do you do with Broomfield, though? That's a 2008 case. Correct. That makes it clear that prosecution for homosexuality is per se, per se, persecution. Doesn't that get around the aspect of adverse credibility when you combine it with the aspect of Al Harby, which basically says, hey, in this case, there's a warrant out there for this guy. Yes, Your Honor. And it says right on the warrant, you know, he is wanted for homosexuality, which is a criminal offense in Cameroon. Doesn't that undermine the government's position? I mean, I understand that normally adverse credibility plays a very significant role, but this seems to provide a limited avenue where, as opposing counsel pointed out, in this very rare situation where you have a foreign government that's openly admitting, we want to prosecute this guy because he is a homosexual. And gross indecency. I'm sorry? And gross indecency. Gross indecency and homosexuality are mentioned both in the arrest warrant, and he was caught on two occasions in public having sex. So that's the gross indecency part of it. But I'll grant you that, Your Honor, with respect to Broomfield. It says what it says. There's no doubt about it. But let's investigate how Broomfield, I think, enters the case. I think with respect to Broomfield, I'm willing to be corrected by my opposing counsel. I don't believe Broomfield was cited to the immigration judge or to the board in this case. I don't know that it was raised. Was or was not? I don't believe it was. And I think the way it was introduced in this case, and, again, I'm willing to be corrected on this, I think it comes up in the reply brief, Your Honors. So I don't think Broomfield was ever before the agency. And it's true. It's a 2008 case. But Broomfield also says that the legal error that the board made in that case was that it didn't consider government acquiescence on the cat claim. I don't think it really speaks to asylum. And I think, as Judge Beatty points out, Ventura and Gonzalez told this court not once, but twice, and not just twice, but in summary reversal, that you cannot get to the merits or the heart of an asylum claim if the agency makes an adverse credibility determination and does not address past persecution, well-founded fear, relocation at the agency level. All those questions have to go back. So if you agree with petitioners that adverse credibility is not sustainable under the very deferential substantial evidence standard, then you have to send the case back with respect to asylum. And I guess that's my question, is since they cited Al Harvey from the beginning, maybe they didn't cite Broomfield, but that's the case law. It's out there. But I don't think they cited it for the proposition you made in your question. They cited the case. They cited the case. So it's not a surprise to the government. No, no, no. So isn't the correct answer to send it back with the idea that here's Broomfield, here's Al Harvey. Even if you have an adverse credibility determination, you can still determine that the requirements for asylum are met. Is that correct or not? With respect to asylum. Correct. With respect to asylum. On cat, however, Your Honor. We can see that. I just wanted to make sure that was said. On cat, you have to find that the evidence compels a conclusion that harassment and criminalization of homosexuality. Let's assume that they lose on cat, but on asylum. Yes. Isn't the correct answer to send this back so the IJ can consider Broomfield and Al Harvey and look at the facts of this warrant? If you find that the record compels reversal of the adverse credibility determination. Even putting aside adverse credibility, just on the basis that Harvey seems to suggest that adverse credibility is not determinative of whether there's persecution in this setting, right? Let me say this. I don't know that Al Harvey came into the case the way that you put it in your question. Broomfield, I also don't believe, came into the case until the reply brief. I don't know what error you would point to that the IJ committed with respect to Al Harvey and Broomfield. Broomfield is really clear that to prosecute somebody for being a homosexual is persecution for purpose of asylum, right? I think it says it with respect to torture. Okay, well. Not persecution. I understand torture is primarily a cat claim, but the reality is if somebody has an objective and a subjective fear because you have this warrant out there that you're going to be persecuted for being who you are, that satisfies the requirements of asylum, arguably. I admit torture is a slightly different concept, but it still fits into the issue of persecution, does it not? I'll respectfully disagree because the arrest warrant says gross indecency and homosexuality, and he was caught twice in a grossly indecent situation. They do the same thing for purposes of Cameroon law, do they not? Likely. But I'll say this. I think if the court sends it back because of Al Harvey and Broomfield, it's not because the agency erred with respect to those cases. It's because the agency should have another opportunity to look at the case with respect to Broomfield. Would the government oppose that? Well, the Attorney General probably wouldn't want me to have it sent back for that. He's a nice guy. Well, indeed, indeed, Your Honor. But I think also, again, you wouldn't be sending it back because the agency erred by disagreeing with Al Harvey on Broomfield. You would just say on an open record because of. So if we said we may or may not have erred, but we want you to take another look at this, how would that be? I think your Article III judges and we would look at that, and the Solicitor General would have to decide whether that was there or whether they wanted to file a rehearing petition. But as of today, I couldn't say that the Attorney General would agree with that because there was no error. I don't think Al Harvey came into the case the way that you raised in your question. Broomfield, I don't believe, and they can correct me if I'm incorrect, I think Broomfield came into the case in the reply brief, Your Honor. I still struggle with how Al Harvey applies because the facts there were very different. It appears to almost be a one-off outlier case because the regulations require subjective and objective components for fear of future persecution. And this is a case that obviates part of the regulation. But in that case, the petitioner was part of a group, and all of the group together there was evidence that they would be executed. The objective evidence was so strong, and there was objective evidence that this petitioner would be executed if he were returned to his country of origin. And his testimony wasn't credible. That was also a problem because he changed his testimony so many times. But in those facts, which was very powerful evidence involving multiple other petitioners who came in his same group, you would be executed if you went back. The court made an exception. How do we put this arrest warrant? Will you make that factual determination that this arrest warrant means that, and we can obviate the subjective component of fear of future persecution? No, I don't think you can, Your Honor. I think immigration judges grant asylum and withholding removal to individuals. They don't grant asylum documents or arrest warrants. We have to take the individual as a whole, and this individual is wrapped up in adverse credibility and not believability. So the immigration judge has to take a look at the person. This person comes with an arrest warrant but comes with a story that isn't believable, and the record does not compel the reversal of the adverse credibility determination. So when you look at granting asylum to an individual, this individual is wrapped up in adverse credibility. And with respect to asylum and withholding, putting Kat to the side for a moment, it's wrapped up with adverse credibility, so we can't believe this individual. And that's why I'll harp on that. How do you judge adverse credibility today in our circuit? We've got Kumar, and now we've got Kalu. You have a lamb en banc as well. There is a request for an en banc. But as it stands right now, is it the government's position that under either standard, adverse credibility has been shown here by sufficient evidence? Absolutely, Your Honor. There are multiple inconsistencies. There are inconsistencies with respect to whether the baptism celebration, that the beating or conflagration happened during that celebration versus the day after. That's clearly two separate events, and the petitioner testified that it happened after the baptism celebration. There's also a question with respect to relocation. He's told the asylum officer that he moved to relocate with some friends. He denied that before the immigration judge. There's also a question with respect to the scope of his injuries. He has an individual who put in a declaration or affidavit saying he was hit once and concussed. He said multiple times, I was hit repeatedly on my right side. There's a conflict there. So there's multiple inconsistencies. He said that he was hit in his body. That was the overall. I frankly don't find that inconsistent. He later on talked about his foot and his leg, I think. But he also said he was hit in his body. What I struggle with is that I do find some inconsistencies, but some of what was found to be inconsistent is at least explicable in a way that's not contradictory.  No, I wouldn't, Your Honor. I think one out of ten immigration judges might agree with you, but that's not the standard. All it takes is one reasonable person to sustain this record and the adverse credibility. We have a very deferential standard of review, Your Honor. The record has to compel reversal. And we can talk about dividing and conquering each individual adverse credibility determination, but I think the court knows that's not the court's role, and we take the person as a whole. It's not just that one individual inconsistency that might have an explanation for it, which the immigration judge isn't required to accept. There's a host of inconsistencies here. So I think this case, and I'll admit, this is a tough case. I think it's a case where, you know, the irresistible force of adverse credibility hits the immovable object of the arrest warrant. And what do you do in that situation as a court? You lean into what the agency did, given the deferential standard of review. May I go back, counsel, to something you said early on? That is the role of the objective and subjective components. It almost sounds like what you're saying is the objective component is a cross-check against the subjective component, which tells me it's the subjective component that matters. The objective component is just the cross-check. Therefore, there shouldn't be a method by which the objective component trumps the subjective component. Is that essentially what you're saying? Correct, Your Honor. I think you've encapsulated very, very well there, because the objective component is just asking whether your subjective belief is really true and reasonable. But the objective component is overridden when the subjective component is affected and infected by the adverse credibility determination. But here you have a warrant issued by the national police nationwide that says this individual is being arrested for being a homosexual. That's objective. It's real. It is. I gather the government concedes it's real, right? Well, that's one of the reasons why I sent it back to the board, because the board in the first round, if you recall, they said, well, he didn't say it was issued nationwide. And my view at that time before the remand was it really doesn't matter if they say or if he says whether it was issued. It's clear from the face of the arrest warrant that it had a distribution list nationwide. So that's why I personally had it sent back to the agency. You need to deal with it. But the reality is it was shown that it did have, right? That's correct, Your Honor. So there is a nationwide warrant for this man's arrest for being a homosexual. That's objective. That's objective. But we have to separate asylum and CAT. So asylum has the adverse credibility problem. CAT, as you know, if there's an adverse credibility problem but the objective evidence, the country conditions compel reversal, then we have to deal with that. So the arrest warrant comes alive in the CAT claim. But the board said mere harassment and criminalization is not enough. The court disagrees with that. You disagree with that. But the arrest warrant, excuse me, Your Honor. So it's the government's position that with respect to CAT, he's toast based on adverse credibility in adverse, I'm sorry, in asylum. Reverse, yes. In asylum. CAT, it's brought forward. You have full preliminary review with respect to the question on CAT. But in this case, if you've got somebody who is fearful, you have the initial interview and so on, but they're fearful that they're going to be arrested and beaten up or killed because they're homosexual, that doesn't qualify to get this national arrest warrant? No, it doesn't because the regulations say you have to show CAT through specific intent to cause severe pain or mental suffering. And the board here said. That's kind of that way, isn't it? Well, the board said criminalization and harassment in this scenario isn't enough to demonstrate CAT. His lover was killed. Indeed, his lover was killed. But each scenario in which he discusses his case, those were private individuals. And with respect to private individuals, you have to show government acquiescence. He shows no government interaction with him in any of these scenarios. That's a CAT issue, right? Correct. So I'm getting back to asylum. And I'm just saying, you know, if he comes in over the border and he says, boy, I don't want to go back because they're going to kill me because I'm a homosexual, they'd say, well, you may have a legitimate fear here. And it would be further buttressed by the existence of the warrant. I admit that some of the timing was a little strange here. It wasn't all brought up at the same time. But that's what I'm struggling with is what do we do with this unusual case? I admit it's unusual. Absolutely. But you've got this warrant. And I don't see how that doesn't play into the objective element of asylum. And that's why I mentioned the irresistible force and immovable object. And I think what you do in that scenario is you lean into what the agency did, and you have a standard of review that tells you you have to find that the record compels reversal of the agency. And the agency leaned into what I think the point that I'm making here is, sure, you have the arrest warrant, but why the prevarication? Why the lies? And we could send the signal that it's okay to lie as long as you've got some objective evidence. Correct. That's absolutely right, Your Honor. But agencies grant relief to individuals, not documents. And this individual is wrapped up in adverse credibility. If there's no further questions, we ask to deny the petition. Other questions? Thank you, Your Honor. Very well. So we have a little rebuttal time, counsel. I see what you're up against. What do you think? Yes. I'll start by addressing some of the questions about the record that I said I'd bring back up on rebuttal. The first is that the argument about objective evidence being sufficient to establish eligibility for asylum was made before the BIA during the first round in 2020, and that's on the record, page 161. And it states that even if the IJ discredited Mr. Mebitene's own testimony of past persecution, the arrest warrant explicitly invoking a sexual orientation, combined with the extensive documentation of LGBT individuals' persecution, justified a grant of asylum. The second point I'd like to note is that Bromfield was discussed in both the opening and reply briefs before this court, not just the reply. Third is that Alharbi was cited a number of times in our briefing. Your Honor mentioned the opening brief. It was also cited in the reply brief on page 6. But as you know, it's not sufficient to make an argument for the first time on reply. I mean, it's not in your opening brief, this argument you're making now. So the government says something back, and then you come forward with a new argument. Your Honor, we believe it was made in our opening brief because we cited Alharbi. It wasn't a new case that we sprung on the government. But not for that proposition. I mean, I went to your table of contents. I saw it's on one page and went to see what you said about it, and it doesn't say anything about the subjective, subjective components. We did address the subjective and objective components, Your Honor, in stating that because it was so clear there was a likelihood, he would reasonably have a subjective fear. And I'm almost out of time, and I just want to highlight, we've been talking a lot about asylum and CAT. There's a third claim here, and that's withholding of removal. Withholding of removal does not have a subjective component, as the Supreme Court found in INS v. Cardoza-Fonseca. And there, we're not talking about torture. We're just talking about persecution. And if there are no further questions, we'd urge the Court to find him eligible or remand. Very good. Thank you both for your argument. We appreciate it very much. The case just argued is submitted. Thank you.
judges: SMITH, BADE, Fitzwater